**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JHEN SCUTELLA,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **C.A. No. 1:25-cv-251** |
| | ) | |
| | ) | |
| **DETECTIVE JOSEPH CAMBRA, et al,** | ) | **District Judge Baxter** |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

### I. Procedural History

Plaintiff Jhen Scutella, acting pro se, initiated his action on August 11, 2025. ECF No. 4. Plaintiff's legal claims of false arrest, illegal search and seizure, and malicious prosecution arise out of his April 2025 arrest. As Defendants to the action, Plaintiff names City of Erie Detectives Joseph Cambra and S. Uplinger. Plaintiff seeks to enforce these alleged constitutional violations by way of 42 U.S.C. § 1983. As relief, Plaintiff seeks declaratory relief, as well as compensatory and punitive damages from Defendants in the amount of approximately five hundred thousand dollars. *Id.*

In response to the Complaint, Defendants moved to dismiss or in the alternative for summary judgment. ECF No. 15. In support of their motion, Defendants provided a Concise Statement of Material Facts and Appendix with Supporting Evidence. Plaintiff opposed the dispositive motion and filed a Responsive Concise Statement. The motion is fully briefed and is ripe for disposition by this Court.

## II. Standards of Review

### A. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). The "court[] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" when considering the motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) *citing In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) *citing* 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-36 (3d ed. 2004). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The complaint need not prove the plaintiff will prevail, but must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Labels, conclusions, and a "formulaic recitation of the elements" are insufficient. *Id.* at 555. Nor must the court accept unsupported inferences or legal conclusions disguised as factual allegations. *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007); *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009)

The Third Circuit has laid out the following three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no

> more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and the determine whether they plausibly give rise to an entitlement for relief.

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) *quoting Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Because Plaintiff is proceeding pro se, the allegations of his complaint must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court must "apply the applicable law, irrespective of whether [Plaintiff] has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002); *See also Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) ("Our policy of liberally construing pro se submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training."). Notwithstanding this relaxed pleading standard, however, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina*, 704 F.3d 239, 245 (3d Cir. 2013).

**B. Non-conversion to summary judgment**

Ordinarily, a court reviewing a motion to dismiss under Rule 12(b)(6) may not consider matters outside the pleadings without converting the motion into one for summary judgment. Fed. R. Civ. P. 12(d). The Third Circuit, however, recognizes several exceptions to this rule. A court may consider "the complaint, attached exhibits, and matters of public record" without triggering conversion. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). This includes

documents that are "integral to or explicitly relied upon in the complaint," even if not physically attached to it, as well as prior "judicial proceedings," which "constitute public records" of which a court may take judicial notice. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Sands*, 502 F.3d at 268.

Plaintiff has submitted evidence in support of his complaint [ECF No. 4] and Defendants have submitted evidence in support of their dispositive motion [ECF No. 15]. Because the Court is not converting this motion to a summary judgment motion, the review is limited to court records of which it may take judicial notice. These documents are: (1) the Criminal Complaint with Affidavit of Probable Cause [ECF No. 4-1]; (2) the Arrest Warrant [ECF No. 4-3]; (3) Application for Search Warrant of Phone (one page) [ECF No. 4-4]; (4) Erie County Court of Common Pleas Criminal Docket [ECF No. 4-5; and finally, (5) Application for Search Warrant of Phone with Supporting Affidavit of Probable Cause (six pages) [ECF No. 15-10]. This Court will take judicial notice of these documents because they are court records and because their authenticity is undisputed. *See In re Congoleum Corp.*, 426 F.3d 675, 679 n.2 (3d Cir. 2005) (taking judicial notice of "state court proceedings insofar as they are relevant"); *Mollett v. Leith*, 2011 WL 5407359, at *2 (W.D. Pa. 2011) ("A court may also take judicial notice of the docket in Plaintiff's underlying criminal trial.") *aff'd sub nom. Mollett v. Leicth*, 511 Fed. App'x 172 (3d Cir. 2013).

### III. The Factual Allegations of the Complaint

In his Complaint, Plaintiff purportedly raises three legal claims under the Fourth Amendment: false arrest, malicious prosecution, and illegal search and seizure. The factual allegations supporting these claims, as underdeveloped as they are, are related here in their entirety.

On March 17, 2025, roof shingles were stolen from a business at 1317 West 12th Street. Detective Cambra investigated the burglary and arrested multiple suspects including Richard Slider. Thereafter, investigation continued into the disposition of the shingles.

In April 2025, Detective Cambra telephoned Plaintiff inquiring about his connection to 917 Walnut Street, a property Plaintiff and a business partner, Douglas Rainey, were rehabbing to sell. Plaintiff, who initially assumed the call concerned a neighboring vacant property that had been repeatedly burglarized, realized he was instead being investigated for an unrelated crime. Plaintiff informed Cambra that he had receipts for supplies purchased for the project and another rehab project nearby, and voluntarily agreed to an in-person interview. Plaintiff alleges that Cambra's true motive was to target him based on his criminal history, the only basis for suspicion being an uncorroborated accusation from an arrestee with a drug addiction and a personal motive to shift blame.

Sometime later, Plaintiff went to the precinct without counsel to deliver multiple receipts for shingles he purchased: a November 2024 delivery of over 50 bundles of shingles, of which only 30 were used at the 918 Walnut address; receipts for shingles purchased around the time of the alleged burglary, verifiable by his business partner; and receipts for shingles purchased while finishing the roof at 917 Walnut Street. During the interview, Cambra stated he wanted to speak with Douglas Rainey to verify certain details. Plaintiff alleges this was not a genuine investigation but one in which Cambra had already concluded Plaintiff was guilty based on his criminal history or other information Cambra had heard about him.

After being unable to locate Rainey, Cambra notified Erie County Adult Probation that he was filing felony charges against Plaintiff and then filed three charges. Because Plaintiff's

probation expired within five days, Probation – limited to a five-day hold—let the warrant run its course rather than detain him.

An arrest warrant was issued on April 24, 2025, and Plaintiff turned himself in on May 1, 2025. He was formally charged with felony solicitation to commit burglary, felony conspiracy to commit burglary, and receiving stolen property, and was held over four hours in a holding cell awaiting arraignment. Plaintiff alleges the criminal charges rested solely on the arrested burglar's blame-shifting statement. Plaintiff later learned from workers on the job site that the burglar was a former employee terminated from the crew that same week – information Plaintiff lacked at the time because he does not perform physical work on-site but only delivers materials and inspects completed work.

Plaintiff was arraigned on the criminal charges and released on unsecured bond. Sometime later, after attending Rainey's preliminary hearing, Plaintiff was approached by Detectives Cambra and Uplinger who informed him they had obtained a search warrant for his phone. The arrest warrant was signed by Magisterial District Justice Suzanne Mack on June 30, 2025. Plaintiff alleges the warrant was based on a fabricated affidavit, as Cambra's case rested solely on the arrested individual's uncorroborated statement and lacked actual evidence against Plaintiff or Rainey. Plaintiff alleges this warrant resulted in an illegal search and seizure of his phone.

On July 14, 2025, the charges against Plaintiff were withdrawn. Neither the complaint nor the underlying criminal docket indicate why the charges were withdrawn.

Plaintiff summarizes his present legal claims as:

> Cambra and Uplinger conspired to illegal search and seize my phone my [sic] and falsely arrest me and maliciously prosecute the plaintiff based solely on the testimony of a drug addict and no corroborating evidence. Detective Cambra filed charges against the Plaintiff and when the witness was not able to be found and

> the case was coming to a close[,] Detective Cambra and Detective Uplinger conspired against [Scutella] to fabricate facts to obtain a search warrant for my business phone.
>
> * * *
>
> Other than the testimony of a substance addicted man charged with a burglary, who is potentially facing years in prison for crime he committed and caught red handed and the Plaintiff may have met once on a job site and exchanged numbers with him, used his testimony solely to obtain warrants for the physical arrest of the Plaintiff and also warrant for the Plaintiff's phone[.] Joseph Cambra embellished and fabricated facts to judges and his superiors to obtain these things to maliciously prosecute the Plaintiff and falsely arrest the Plaintiff as well.

ECF No. 4, pages 5-6.

## IV. Analysis

### A. Preliminary Matters

Section 1983 provides a private cause of action for the deprivation of rights secured by the Constitution or laws of the United States by any person acting under color of state law. *See* 42 U.S.C. § 1983. The statute does not itself create substantive rights; rather, it serves as the vehicle through which individuals may vindicate federal constitutional and statutory rights violated by state actors. *Gomez v. Toledo*, 446 U.S. 635, 638-39 (1980). Where a state actor deprives an individual of a right guaranteed by the Constitution, that individual may seek redress in federal court through a § 1983 action against the responsible official. Here, Plaintiff alleges that Defendants violated his Fourth Amendment rights by falsely arresting him, maliciously prosecuting him, and conducting an unlawful search and seizure of his cell phone.

### B. Lack of Probable Cause

The absence of probable cause is an essential element of both false arrest and malicious prosecution claims that Plaintiff must plead and ultimately establish. *See James v. City of Wilkes-*

*Barre,* 700 F.3d 675, 680, 683 (3d Cir. 2012) (lack of probable cause is an element of a Fourth Amendment false arrest claim); *Johnson v. Knorr,* 477 F.3d 75, 81-82 (3d Cir. 2007) (lack of probable cause is an element of a Fourth Amendment malicious prosecution claim). Conversely, the existence of probable cause defeats each of these claims. Defendants rely on this principle in support of their dispositive motion.

Probable cause exists when the facts and circumstances within an officer's knowledge are sufficient to warrant a reasonable person to conclude that the person being arrested has committed an offense. *See Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995); *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). The inquiry is an objective one and turns on the facts known to the officer at the time of arrest, not on whether the arrestee actually committed the offense or on facts learned afterward. *See Groman*, 47 F.3d at 634; *Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997). Probable cause requires more than mere suspicion, but does not require evidence sufficient to establish guilt beyond a reasonable doubt. Moreover, probable cause to arrest for any one offense generally defeats a § 1983 false arrest claim, even if the officer lacked probable cause for another offense. *See Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) *citing Edwards v. City of Philadelphia*, 860 F.3d 568, 575-76 (3d Cir. 1988).

Here, the Criminal Complaint and the Affidavit of Probable Cause, both authored by Detective Cambra, identify several facts linking Plaintiff to the burglary. ECF No. 4-1, pages 1-5. Those facts include admissions and statements by multiple suspects involved in the burglary implicating Plaintiff; Plaintiff's own confirmation that he owned 917 Walnut Street, where the stolen shingles were delivered; a photograph posted to Plaintiff's public Facebook page on March 23 depicting him completing the roof at 917 Walnut Street with pink-packaged shingles;

and receipts produced by Plaintiff that were inconsistent with the shingles used on the roof of 917 Walnut Street. Notably, Plaintiff acknowledges throughout his own Complaint that his arrest was based, at least in part, on statements from others identifying him as involved in the crime. ECF No. 4. Considering the totality of the circumstances known to Detective Cambra at the time, there was a fair probability that Plaintiff had received the stolen shingles and used them to rehabilitate the residence he owned at 917 Walnut Street, where the stolen shingles had been delivered. Probable cause to arrest Plaintiff for his involvement in the burglary is apparent. Accordingly, because Plaintiff cannot plead the lack of probable cause to arrest, his claims of false arrest and malicious prosecution will be dismissed with prejudice.

### C. Reasonableness of Search and Seizure of Cell Phone

Plaintiff's final claim is that Uplinger conspired with Cambra to fabricate facts to obtain a search warrant for the cell phone. ECF No. 4, page 6. Plaintiff alleges that the sole evidentiary basis for the search warrant was the self-serving testimony of the burglary suspect.

A review of the search warrant does not support Plaintiff's versions of events. To the contrary, the warrant authorizing seizure of Plaintiff's cell phone was based only in part on the burglary investigation, which included interviews with multiple suspects and other witnesses, rather than a single suspect. The warrant application also cited photographs posted to Plaintiff's social media depicting the same brand of shingles reported stolen, located on a home Plaintiff owned. More significantly, cell phone location data obtained from Plaintiff's T-Mobile account contradicted his prior statement regarding his whereabouts at the time of the burglary and implicated him in witness intimidation. Finally, three jailhouse phone calls between Plaintiff and

his co-defendant – who is also his uncle and business partner- further implicated Plaintiff in the underlying offense. *See* ECF No. 15-10, pages 1-6.

Plaintiff's claim cannot survive. To prevail on a claim that a search warrant was procured through false information, a plaintiff must show both that the affiant knowingly or recklessly included false statements or omitted material facts, and that the warrant lacked probable cause once the false material is set aside or the omitted material is included. *See Franks v. Delaware*, 438 U.S. 154 (1978); *Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000). Here, even if the Court were to disregard the burglary suspect's testimony entirely, as Plaintiff urges, the warrant application contains ample independent evidence establishing probable cause: the social media photographs linking Plaintiff to the stolen property, the T-Mobile location data contradicting his account of his whereabouts, and the recorded jailhouse calls with his co-defendant. Plaintiff's claim rests on the mistaken premise that the burglary suspect's testimony was the sole basis for the warrant, but the face of the warrant application reveals otherwise. Because probable cause existed independent of any allegedly fabricated or self-serving statement, Plaintiff cannot establish the causal link between the alleged fabrication and the issuance of the warrant that *Franks* and its progeny require. Accordingly, Plaintiff's claim that Uplinger and Cambra conspired to fabricate facts to secure the warrant fails as a matter of law.

An appropriate Order follows.